UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KYLE J. MILLHOUSE,

    *Plaintiff*,

v.

JOHN PHELAN, Secretary of the Navy,[1]

    *Defendant*.

Civil Action No. 24-2468 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

    Kyle J. Millhouse is a former United States Marine. He was first deployed to Iraq in 2006 at the age of nineteen, where he developed combat-related, service-connected post-traumatic stress disorder (PTSD). He returned from Iraq and immediately began training for his next deployment. Although he was struggling with PTSD, he was asked to take on the role of squad leader. But before Mr. Millhouse and his new squad could deploy, he was discharged for hazing and assaulting junior Marines under his command. Because of those incidents, the United States Department of the Navy discharged him with an "Under Other than Honorable" service characterization. He later applied to the Naval Discharge Review Board (NDRB or Board) to upgrade that service characterization from "Under Other than Honorable" to "Honorable" in light of his PTSD diagnosis. The Board denied Mr. Millhouse's request because of the hazing and assault incidents that led to his discharge. But in doing so, it mistakenly stated that Mr. Millhouse's assigned characterization at discharge was "General" or "Under Honorable Conditions."

---

[1] The current Secretary is substituted for his predecessor pursuant to Fed. R. Civ. P. 25(d).

After Mr. Millhouse notified the Board of its error, the Board reconsidered his upgrade application. Although this time it correctly recorded his service characterization as "Under Other Than Honorable," it again denied his request because of the incidents of misconduct. Mr. Millhouse now challenges the Board's second reconsideration decision as unlawful under the Administrative Procedure Act (APA) and the Fifth Amendment. The Court agrees that the Board violated the APA by failing to follow its own regulations and grants summary judgment to Mr. Millhouse. But it takes no position on whether his service characterization should be upgraded.

## BACKGROUND

### A.    Statutory and Regulatory Background

All enlisted servicemembers administratively discharged from the United States Marine Corps are assigned one of three characterizations of service upon discharge: (1) Honorable, (2) General (also called "Under Honorable Conditions"), or (3) Under Other Than Honorable Conditions. 32 C.F.R. § 724.109(a). An "Honorable" characterization is "[a] separation from the naval service with honor," *id.* at § 724.109(a)(1), and the NDRB informs servicemembers that this characterization is warranted when "the quality of a member's service *generally meets* the standard of acceptable conduct and performance for Naval personnel." Admin. R. (AR) 227. A "General" characterization is "[a] separation from the naval service under honorable conditions." 32 C.F.R. § 724.109(a)(2). The NDRB states that this characterization is warranted when "the member's service has been honest and faithful but significant negative aspects of the Marine's conduct or performance of duty outweighed the positive aspects of the member's service record." AR 227. And an "Under Other Than Honorable" characterization is "[a] separation from the naval service under conditions other than honorable," 32 C.F.R. § 724.109(a)(3), which is warranted "when a member engages in conduct involving one or more acts or omissions that constitute a significant departure from the conduct expected of members in the Naval Service," AR 227.

Servicemembers wishing to challenge their service characterization may make such a request with the NDRB.[2] *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 531 (D.C. Cir. 1988). The NDRB was established by the Secretary of the Navy in response to a directive from Congress to the Secretary of each military department to "establish a board" to review "the discharge or dismissal (other than a discharge or dismissal by sentence of a general court-martial) of any former member of an armed force under the jurisdiction of [the Secretary's] department." 10 U.S.C. § 1553(a). The NDRB is made up of five Navy officers, *Vietnam Veterans of Am.*, 843 F.2d at 531, and it "may, subject to review by the Secretary concerned, change a discharge or dismissal, or issue a new discharge, to reflect its findings," 10 U.S.C. § 1553(b)(1). It conducts its review using "the records of the armed forces concerned and such other evidence as may be presented to the board." *Id.* § 1553(c).

**B.     Factual Background**

The facts in this case are largely undisputed. Mr. Millhouse joined the Marines in 2006 at the age of nineteen and was almost immediately deployed to Iraq in support of Operation Iraqi Freedom. *See* Pl.'s Local Rule 7(h)(2) Statement (Pl.'s Facts) ¶¶ 4, 7, 9, ECF No. 13; Compl. ¶ 40, ECF. No. 1. During his deployment, Mr. Millhouse's primary missions included "identify[ing] and destroy[ing] insurgent improvised explosive devices ('IEDs') and munitions staches" and "captur[ing] and detain[ing] suspected insurgents." *Id.* ¶¶ 11, 13. He "was also routinely subjected to enemy sniper fire." *Id.* ¶ 15. His "numerous missions searching for and destroying insurgent

---

[2] Servicemembers may also bring a claim to the Board for Correction of Naval Records (BCNR). *Vietnam Veterans of Am. v. Sec'y of the Navy*, 843 F.2d 528, 531 (D.C. Cir. 1988). Whereas the NDRB is staffed by Navy officers, the BCNR is staffed by civilians. *See id.* (listing other differences). "And 'while in limited circumstances [the BCNR] will review a case not yet heard by a DRB, it typically hears cases where a DRB has already denied full relief.'" *Id.* (quoting *Strang v. Marsh*, 602 F. Supp. 1565, 1570 (D.R.I. 1985)).

IEDs, capturing suspected insurgents, and engaging the enemy in armed combat caused Mr. Millhouse to constantly feel on edge, sleepless and restless, and easily agitated." *Id.* ¶ 20 (citing AR 92). His "symptoms began in Iraq and continued throughout his return to the United States." *Id.* ¶ 20 (citing AR 92–93). Ultimately, "these symptoms culminated in Mr. Millhouse's diagnosis of combat-related, service-connected PTSD." *Id.* ¶ 21 (citing AR 84–87, 94).

When he returned to the United States, he "immediately began training for [his] next Iraq deployment." *Id.* ¶ 25 (citing AR 92). His PTSD symptoms worsened and he "began self-medicating with alcohol." *Id.* ¶ 29 (citing AR 93). Despite his struggles, Mr. Millhouse was promoted to the position of squad leader while only a Lance Corporal. *Id.* ¶ 31 (citing AR 92, 243).

On or about March 29, 2007, Mr. Millhouse assaulted a fellow marine by punching him in the face. *See* AR 285, 293–94. He later hazed three other junior Marines, forcing two of them to chug beer, ordering one of them to kneel in the corner while telling him that he was a "waste of semen," and directing another Marine to stare at a mop. *See* AR 271–72. He also assaulted two of the junior Marines by striking one in the face with his hand and putting a mop in the face of the other. *See* AR 271–72. One of the junior Marines involved attempted to commit suicide. AR 281.

The Marine Corps initiated court-martial proceedings against Mr. Millhouse under Articles 81 (Conspiracy), 92 (Lawful General Order Violation), 128 (Assault), and 134 (General Article – Providing Alcohol to a Minor) of the Uniform Code of Military Justice (UCMJ). *See* AR 270–73, 427. He pleaded guilty to many of these charges at a summary court-martial and waived his right to an administrative discharge board. *See* AR 270–73. On February 29, 2008, he was discharged from service for his misconduct with an Under Other Than Honorable characterization of service. AR 242.

4

In December 2010, Mr. Millhouse applied to the NDRB requesting an upgrade of his service characterization. *See* AR 241. The Board denied the request given his misconduct. AR 124. Almost a decade later, on September 28, 2019, the Department of Veterans Affairs diagnosed Mr. Millhouse with combat-related PTSD that was incurred or aggravated by his active military service. *See* AR 84–87. Following this diagnosis, on July 11, 2022, he reapplied to the NDRB for an upgrade of his service characterization under the terms of a class-action settlement (the *Manker* settlement) requiring the Secretary to automatically reconsider its discharge decisions for many U.S. Navy and Marine Corps servicemembers who were discharged while diagnosed with (or exhibiting symptoms of) PTSD and other behavioral or mental health conditions. *See* AR 77–83; Def.'s Opp'n at 4 n. 2 (explaining that on September 16, 2021, the Secretary of the Navy executed a settlement agreement to resolve a class-action lawsuit in *Manker v. Del Toro*, No. 18-cv-00372 (D. Conn. Sept. 17, 2021), ECF No. 211-2).

On June 1, 2023, the Board "automatically reconsidered" Mr. Millhouse's case pursuant to the *Manker* settlement. AR 205; *see also* Pl.'s Facts ¶ 49; Def.'s Opp'n at 4. The Board determined that his service "was honest and faithful but significant negative aspects of [his] conduct or performance of duty outweighed the positive aspects of [his] service record." AR 207. The Board therefore denied relief, concluding that "the awarded characterization of service shall remain **UNDER HONORABLE CONDITIONS (GENERAL)**." AR 207–08. In doing so, the Board mis-recorded Mr. Millhouse's service characterization as General when, in fact, it was Under Other Than Honorable. *See* AR 203, 211, 478.

On October 20, 2023, Mr. Millhouse sent a letter to the Board. AR 211. In it, he interpreted the Board's decision as one "granting him an Under Honorable Conditions (General) characterization of service." *Id.* He wrote that "the Board mistakenly believed that Mr. Millhouse

5

already had a General discharge," and he therefore requested that "the Board issue a corrected decision ordering his DD 214 be amended to reflect a General characterization of service." *Id.*

The NDRB then reconsidered Mr. Millhouse's application "de novo." AR 502; *see* AR 215–20. On October 31, 2023, the Board issued its second reconsideration decision. *See* AR 215–20; *see also* Pl.'s Facts ¶ 59; Def.'s Opp'n at 6. This time, the decision correctly reflected that Mr. Millhouse's service characterization was Under Other Than Honorable Conditions. AR 427. The Board concluded that Mr. Millhouse "engaged in conduct . . . that constituted a significant departure from the conduct expected of members of the Naval Service." AR 430. Accordingly, the Board denied relief and stated that "the awarded characterization of service shall remain **UNDER OTHER THAN HONORABLE CONDITIONS**." AR 431.

### C.     Procedural Background

On August 27, 2024, Mr. Millhouse filed a Complaint in this Court, alleging that the NDRB's October 2023 "decision amounts to an arbitrary and capricious action" and "violates [his] Fifth Amendment rights under the Due Process [C]lause." Compl. ¶ 18, ECF No. 1. The Secretary filed an Answer on December 17, 2024. *See* Answer, ECF No. 10. On February 28, 2025, Mr. Millhouse filed a Motion for Summary Judgment. *See* Pl.'s Mot. Summ. J., ECF No. 13. And on April 25, 2025, the Secretary filed a Cross-Motion for Summary Judgment. *See* Def.'s Mot. Summ. J., ECF No. 15. Both motions are fully briefed and ripe for review. *See* Def.'s Opp'n, ECF No. 16; Pl.'s Reply, ECF No. 17; Pl.'s Opp'n., ECF No. 18; Def.'s Reply, ECF No. 19.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 56 requires a court to grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]'" *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting Fed. R. Civ. P. 56(a)). But "in APA cases, the summary

6

judgment standard functions slightly differently, because 'the reviewing court generally . . . reviews the [agency's] decision as an appellate court addressing issues of law,'" *id.* (quoting *Henry v. Sec'y of Treasury*, 266 F. Supp. 3d 80, 86 (D.D.C. 2017)). "In other words, summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported' by the record 'and otherwise consistent with the APA standard of review.'" *Henry*, 266 F. Supp. 3d at 86 (quoting *Remmie v. Mabus*, 898 F. Supp. 2d 108, 115 (D.D.C. 2012)). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (cleaned up).

"[D]ecisions regarding the correction of military records are reviewable under the 'arbitrary or capricious' standard of APA § 706[.]" *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989) (citing *Chappell v. Wallace*, 462 U.S. 296, 303 (1983)). "The APA requires a reviewing court to 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Henry*, 266 F. Supp. 3d at 86 (quoting 5 U.S.C. § 706(2)). "An agency action is arbitrary and capricious if the agency has . . . 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Evergreen Shipping Agency (Am.) Corp. v. Fed. Mar. Comm'n*, 106 F.4th 1113, 1117 (D.C. Cir. 2024) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action

7

including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). And "[a] court cannot uphold agency action based on reasons or rationalizations 'other than that expressed by the agency.'" *Toledo Hosp. v. Becerra*, 621 F. Supp. 3d 13, 26 (D.D.C. 2021) (quoting *Cath. Healthcare W. v. Sebelius*, 748 F.3d 351, 354 (D.C. Cir. 2014)).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. "In the context of decisions on military records, the standard is even more deferential 'to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence.'" *Moskowitz v. Driscoll*, No. 23-cv-2461, 2025 WL 901241, at *4 (D.D.C. Mar. 25, 2025) (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)); *see also Ferguson v. McHugh*, 64 F. Supp. 3d 33, 40 (D.D.C. 2014) ("Courts review such decisions under an unusually deferential application of the 'arbitrary and capricious' standard of the APA." (cleaned up)). "Accordingly, the court asks only if the Secretary's 'decisionmaking process was deficient, not whether [the] decision was correct.'" *Moskowitz*, 2025 WL 901241, at *4 (cleaned up) (quoting *McKinney v. Wormuth*, 5 F.4th 42, 46 (D.C. Cir. 2021)). "That said, this 'broad discretion in administering the correction of military records does not obviate the APA's requirement that administrative actions be supported by reasoned decisionmaking.'" *Id.* (quoting *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020)).

## DISCUSSION

Mr. Millhouse challenges the NDRB's October 2023 reconsideration of his discharge application as arbitrary and capricious under the APA and unconstitutional under the Fifth Amendment. *See* Compl. ¶¶ 86, 96, 103, 109; Pl.'s Mot. Summ. J. at 17–26. His APA arguments

8

take two forms. First, he contends that the Board's October 2023 reconsideration was arbitrary and capricious "because it had already made dispositive factual conclusions" about his service and failed to explain how it reached a different conclusion based on the same evidence. Pl.'s Mot. Summ. J. at 18. Second, he avers that the NDRB failed to abide by its own regulations in reconsidering its prior decision. *Id.* at 20–21. Although the first argument is not persuasive, the Court agrees with the second. It therefore grants summary judgment in Mr. Millhouse's favor and declines to address his Fifth Amendment claim.

*First*, Mr. Millhouse argues that the Board had no basis to change its service-characterization decision in October 2023, having concluded that he was entitled to a service characterization of General just months earlier. *See id.* at 18–19. But this mischaracterizes the Board's June 2023 decision. As the Secretary points out, the Board never decided to upgrade Mr. Millhouse's discharge status to General. Def.'s Opp'n at 9. The record is clear that, during the June 2023 reconsideration, the Board mistakenly believed that Mr. Millhouse had received a service characterization of General. *See* AR 203 (summarizing Mr. Millhouse's service characterization as "(per [his] DD 214) UNDER HONORABLE CONDITIONS (GENERAL)"); AR 476 (email from the President of the NDRB stating that "[t]he previous Board erred when it voted the case on the Recorder's error that [Mr. Millhouse] received a General, but has a[n] [Under Other Than Honorable]"). Indeed, the Board stated that it was denying relief, concluding that "the awarded characterization shall *remain* **UNDER HONORABLE CONDITIONS (GENERAL)**." AR 207–08 (emphasis added).

When Mr. Millhouse reached out to the Board to request "a corrected decision ordering his DD 214 be amended to reflect a General characterization of service," AR 211, the NDRB recognized its error and reconvened to review the matter, *see* AR 482. This time, the Board

correctly stated that Mr. Millhouse's service had been characterized as Under Other Than Honorable. *See* AR 215 (summarizing Mr. Millhouse's service characterization as "(per [his] DD 214) UNDER OTHER THAN HONORABLE CONDITIONS"). Reviewing Mr. Millhouse's application with this correct understanding, the Board again concluded that relief was unwarranted and that Mr. Millhouse's characterization of service should remain unchanged. *See* AR 219–20.

Thus, the Board never concluded that Mr. Millhouse's characterization of status should be upgraded to General. And the October 2023 reconsideration did not arbitrarily and capriciously reverse a prior factual finding. The record firmly establishes that the October 2023 reconsideration merely sought to correct the Board's misunderstanding of Mr. Millhouse's original service characterization. Mr. Millhouse's first APA argument thus fails. *See Frizelle v. Slater,* 111 F.3d 172, 176 (D.C. Cir. 1997) ("All that is required is that the Board's decision minimally contain a rational connection between the facts found and the choice made." (cleaned up)); *see also, e.g.*, *Hardy v. McHugh,* 692 F. Supp. 2d 76, 80 (D.D.C. 2010) (emphasizing the "unusually deferential application of the arbitrary and capricious standard" in the military context (cleaned up)).

*Second*, Mr. Millhouse contends that the Board's initiation of the October 2023 reconsideration ran afoul of its own regulations. Pl.'s Mot. Summ. J. at 20–21. More specifically, he points to 32 C.F.R. § 724.217, which directs that "[a] discharge review shall not be subject to reconsideration except" in seven specified circumstances. And because, according to Mr. Millhouse, his case did not fit any of those circumstances, Section 724.217 forbade the October 2023 reconsideration. The Court agrees.

"[I]t is a familiar rule of administrative law that an agency must abide by its own regulations." *Castaneira v. Noem*, 138 F.4th 540, 550–51 (D.C. Cir. 2025) (quoting *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990)). And "an agency action may be set aside

10

as arbitrary and capricious if the agency fails to 'comply with its own regulations.'" *Elevance Health, Inc. v. Becerra*, 736 F. Supp. 3d 1, 13 (D.D.C. 2024) (quoting *Nat'l Env't Dev. Assoc.'s Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014)). As Mr. Millhouse correctly observes, 32 C.F.R. § 724.217 governs the NDRB's authority to reconsider a discharge review decision. And because that provision directs that discharge review decisions generally "shall not be subject to reconsideration," the Board could not reconsider its previous decisions unless the reconsideration fit one of the seven circumstances contemplated by Section 724.217.

But in the October 2023 decision, the Board did not claim that reconsideration was authorized by any of the seven exceptions to the general rule against reconsideration in Section 724.217. Instead, the October 2023 decision said (using language repeated verbatim from the June 2023 decision) that the Board "automatically reconsidered" Mr. Millhouse's application "[p]ursuant to the Settlement Agreement in *Manker v. Del Toro*." AR 217. But the June 2023 decision already constituted the Board's automatic reconsideration of Mr. Millhouse's application pursuant to the *Manker* settlement. The *Manker* settlement, therefore, does not support the October 2023 reconsideration. And the Court agrees with Mr. Millhouse that the October 2023 reconsideration did not fit any of Section 724.217's seven exceptions to the general rule prohibiting reconsiderations.[3] Therefore, the October 2023 reconsideration did not comply with

---

[3] 32 C.F.R. § 724.217 directs that reconsideration is permitted only when (1) "the only previous consideration of the case was on the motion of the NDRB"; (2) "the original discharge review did not involve a personal hearing and a hearing is now desired"; (3) "changes in discharge policy are announced after an earlier review of an applicant's discharge, and the new policy is made expressly retroactive"; (4) the NDRB determines that policies or procedures have been changed to substantially enhance the rights afforded to applicants, and the applicant was discharged under the prior policies or procedures; (5) "an individual is to be represented by counsel or representative, and was not so represented in any previous consideration of the case"; (6) "the case was not previously considered under uniform standards published pursuant to Pub. L. 95–126"; and (7) the applicant presents "new, substantial, relevant evidence not available at the time of the original review."

11

32 C.F.R. § 724.217 and must be set aside as arbitrary and capricious. *See Elevance Health*, 736 F. Supp. 3d at 13.

The Secretary does not dispute that Section 724.217 generally prohibits reconsideration of discharge review decisions. *See* Def.'s Opp'n at 11–12. Nor does he dispute that the October 2023 reconsideration did not fit into any of Section 724.217's specified exceptions. *See id.* Instead, the Secretary argues that the October 2023 reconsideration was authorized by the Department of the Navy's Discharge Review Board Manual. *See* Def.'s Opp'n at 12. That manual states that "[t]he NDRB may conduct a reconsideration when the NDRB determines that a material error/inequity has occurred in the prior review by the NDRB." Department of the Navy Discharge Review Board Manual 38 (2020), ECF No. 21-1. But an agency's guidance manuals cannot override a regulation, like Section 724.217, that has undergone notice-and-comment rulemaking. *See Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 100 (1995) ("We can agree that APA rulemaking would . . . be required if [the manual] adopted a new position inconsistent with any of the Secretary's existing regulations."); *id.* at 110–11 (O'Connor, J., dissenting) ("An agency is bound by the regulations it promulgates and may not attempt to circumvent the amendment process through substantive changes recorded in an informal policy manual that are unsupported by the language of the regulation."); *see also* Discharge Review Board (DRB) Procedures and Standards, 47 Fed. Reg. 37770, 37770, 37789 (Aug. 26, 1982) (codified at 32 C.F.R. pt. 70) (noting that the rule codified at 32 C.F.R. § 724.217 underwent notice-and-comment rulemaking). And in a variety of contexts, courts have applied this rule to enforce regulations over conflicting guidance manuals. *See, e.g.*, *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 748 (2004) ("[N]either an unreasoned statement in the [Internal Revenue Service] manual nor allegedly longstanding agency practice can trump a formal regulation with the procedural history necessary to take on the force of law.");

12

*Actavis Elizabeth LLC v. FDA*, 689 F. Supp. 2d 174, 180 (D.D.C. 2010) (explaining that "[t]he official policy of the agency is expressed in [its] formal regulations" and "[i]t is beyond cavil" that formal regulations cannot be undermined by policy manuals). The Secretary does not contend that this context is any different. The Discharge Review Board Manual, therefore, cannot take precedence over 32 C.F.R. § 724.217.

The Secretary attempts to soothe the conflict between Section 724.217 and the Discharge Review Board Manual by pointing to 32 C.F.R. § 724.202. *See* Def.'s Opp'n at 11–12. That provision states that the NDRB "shall be guided by the applicable statutes, regulations, and manuals and directives of the Department of the Navy." 32 C.F.R. § 724.202. The Court is not persuaded. Although Section 724.202 directs the Board to follow manuals along with other legal sources, it does not address what should happen when any of these sources conflict.

In sum, although the October 2023 reconsideration rationally sought to correct a mistake in the Board's June 2023 decision, the Board nevertheless violated the APA because that reconsideration violated the Department of the Navy's own regulations. Unless and until 32 C.F.R. § 724.217 is changed to permit the material-error reconsiderations contemplated by the Discharge Review Board Manual, the NDRB is bound by the plain text of its regulations.[4]

---

[4] Because the Court finds that the Board violated the APA in its October 2023 reconsideration decision, it declines to address whether the Board also violated the Fifth Amendment. *See, e.g.*, *Bonumose, Inc. v. FDA*, 747 F. Supp. 3d 211, 232 (D.D.C. 2024) (vacating and remanding to the FDA, and declining to address the plaintiff's First Amendment claim based on "the principle that it is prudent to 'avoid deciding constitutional questions presented unless essential to proper disposition of a case'" (quoting *Dalton v. Specter*, 511 U.S. 462, 472 (1994))); *Roberts v. Harvey*, 441 F. Supp. 2d 111, 122 n.14 (D.D.C. 2006) (declining, after vacating a decision by the Army Board for Correction of Military Records and remanding, to address the plaintiff's other claims).

**REMEDY**

"Usually, where a district court reviews agency action under the APA, it acts as an appellate tribunal, so the appropriate remedy for a violation is 'simply to identify a legal error and then remand to the agency.'" *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013) (per curiam) (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)). The Court therefore sets aside the NDRB's October 2023 reconsideration pursuant to 5 U.S.C. § 706(2) and remands this matter to the NDRB for further proceedings consistent with this decision. *See, e.g.*, *Penland v. Mabus*, 181 F. Supp. 3d 100, 106 (D.D.C. 2016) (remanding case to the Board for Correction of Naval Records). The Court notes that even with the October 2023 decision vacated, the operative June 2023 decision is still adverse to Mr. Millhouse because it did not find in his favor or upgrade his service characterization. And the Court takes no position on whether Mr. Millhouse's service characterization should be upgraded. It says only that the October 2023 decision ran afoul of the Board's own regulations, thus violating the APA.

**CONCLUSION**

For the foregoing reasons, the Court grants Mr. Millhouse's Motion for Summary Judgment, ECF No. 13, and denies the Secretary's Cross-Motion for Summary Judgment, ECF No. 15. This case will be remanded to the Naval Discharge Review Board for further proceedings consistent with this decision.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   August 15, 2025